## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM GRAHAM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. _____ |
| v. | ) ) |
| CONDOR HOSPITALITY TRUST, INC., J. WILLIAM BLACKHAM, THOMAS CALAHAN, NOAH DAVIS, DAPHNE J. DUFRESNE, DANIEL R. ELSZTAIN, MATIAS IVAN GAIVIRONSKY, DONALD J. LANDRY, BRENDAN MACDONALD, BENJAMIN WALL, CONDOR HOSPITALITY LIMITED PARTNERSHIP, NHT OPERATING PARTNERSHIP, LLC, NHT OPERATING PARTNERSHIP II, LLC, NHT REIT MERGER SUB, LLC, and NEXPOINT HOSPITALITY TRUST, | ) **CLASS ACTION COMPLAINT** ) **FOR VIOLATIONS OF** ) **SECTIONS 14(a) AND 20(a) OF** ) **THE SECURITIES EXCHANGE** ) **ACT OF 1934** ) ) ) **JURY TRIAL DEMAND** ) ) ) **CLASS ACTION** ) |
| Defendants. | ) ) |

Plaintiff William Graham ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this class action on behalf of the public stockholders of Condor Hospitality Trust, Inc. ("Condor" or the "Company") against Condor's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to NexPoint Hospitality Trust through its operating partnership, NHT Operating Partnership, LLC and its wholly-owned

subsidiary NHT REIT Merger Sub, LLC (collectively "NexPoint").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the United States Securities and Exchange Commission ("SEC") on August 9, 2019. The Proxy recommends that Condor shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Condor is acquired by NexPoint. The Proposed Transaction was first disclosed on July 22, 2019, when Condor and NexPoint announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which NexPoint will acquire all of the outstanding shares of common stock of Condor for $11.10 per share (the "Merger Consideration"). The deal is valued at approximately $318 million and is expected to close in the in the fourth quarter of 2019.

3.     The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Condor management, as well as the financial analyses conducted by KeyBanc Capital Markets Inc. ("KeyBanc"), Condor's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to Condor's shareholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to Condor's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the

defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Condor.

6.      Defendant Condor is a corporation organized and existing under the laws of the State of Maryland. The Company's principal executive offices are located at 4800 Montgomery Lane, Suite 220, Bethesda, Maryland 20814. Condor common stock trades on NYSE under the ticker symbol "CDOR."

7.      Defendant J. William Blackham has been President, Chief Executive Officer and a director of the Company since 2015.

8.      Defendant Thomas Calahan has been a director of the Company since March 2018.

9.      Defendant Noah Davis has been a director of the Company since May 23, 2019.

10.     Defendant Daphne J. Dufresne has been a director of the Company since 2015.

11.     Defendant Daniel R. Elsztain has been a director of the Company since 2012.

12.     Defendant Matías Iván Gaivironsky has been a director of the Company since May 23, 2019.

13.     Defendant Donald J. Landry has been a director of the Company since 2012.

14.     Defendant Brendan MacDonald has been a director of the Company since 2016.

15.     Defendant Benjamin Wall has been a director of the Company since 2017.

16.     Defendants Blackham, Calahan, Davis, Dufresne, Esztain, Gaivironsky, Landry, MacDonald and Wall are collectively referred to herein as the "Board."

17.     Defendant NexPoint Hospitality Trust is an unincorporated real estate investment trust established under the laws of Ontario.

3

18.     Defendant NHT Operating Partnership, LLC is a Delaware limited liability company.

19.     Defendant NHT Operating Partnership II, LLC is a Virginia limited liability company.

20.     Defendant Condor Hospitality Limited Partnership is a Virginia limited partnership.

21.     Defendant NHT REIT Merger Sub, LLC is a Delaware limited liability company and is a wholly owned subsidiary of NHT Operating Partnership, LLC.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) several of the defendant buying entities are incorporated in this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Condor common stock and their successors in interest and/or their transferees, except defendants and any person, firm, trust, corporation or other entity related to or affiliated with the defendants (the "Class").

26.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of July 16, 2019, Condor had approximately 11.9 million shares of common stock outstanding.

(b)     Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were defendants to file a Definitive Proxy with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A. Background Company and Proposed Transaction

27.     Condor, formed in 1994, is a real estate investment trust that owns upscale hotels in the top metropolitan statistical areas. Condor's hotels are franchised by Marriott International, Hilton Hotels Corporation, InterContinental Hotels Group and Choice Hotels International, Inc. The hotels are owned by Condor's operating partnership, Condor Hospitality Limited Partnership, and Condor acts as general manager. As of December 31, 2018, Condor held sixteen hotels in eight states, and one hotel owned through a joint venture. The Company's 2018 revenues were $65

million, a 17% increase from 2017, with net earnings of $5.1 million compared to $2.9 million in 2017.

28.     On July 19, 2019, the Company entered into the Merger Agreement with NexPoint.

29.     According to the press release issued on July 22, 2019 announcing the Proposed Transaction:

## NEXPOINT HOSPITALITY TRUST ANNOUNCES AGREEMENT TO ACQUIRE CONDOR HOSPITALITY TRUST, INC.

**TORONTO, On. / BETHESDA, Md., July 22, 2019** — NexPoint Hospitality Trust (TSXV: NHT.U) ("NHT") and Condor Hospitality Trust, Inc. (NYSE American: CDOR) ("Condor") today announced the execution of a definitive agreement (the "Merger Agreement"), under which NHT's operating partnership, NHT Operating Partnership, LLC ("NHT OP"), will acquire all of the outstanding equity interests of Condor and its operating partnership by merger. The total consideration payable pursuant to the transaction is approximately US$318 million, which will be satisfied by a combination of cash and debt, including the assumption of certain debt.

**Transaction Highlights**

- In line with NHT's growth strategy, NHT will acquire 15 select-service and extended stay hospitality properties, representing 1,908 guestrooms across eight U.S. states (the "Portfolio").

- The transaction will expand NHT's geographic footprint into Georgia, Kansas, Kentucky, Maryland, Mississippi and South Carolina and increase its presence in Florida and Texas.

- Following closing of the transaction, NHT's gross asset value is expected to increase to approximately US$700 million.

- The merger consideration of US$11.10 per share to be paid to holders of shares of common stock represents a premium of approximately 34% over Condor's unaffected share price of US$8.27 as of July 19, 2019, the most recent trading day before the public announcement of the proposal to acquire Condor.

"We're excited about NexPoint Hospitality Trust's strategic merger with Condor Hospitality Trust. The transaction instantly expands NHT's geographical footprint and balances NHTs strategic value-add portfolio with durable, core, extended-stay

hotels." stated NHT's Chief Executive Officer, Jim Dondero. "We believe the future for quality extended-stay and select-service hotels remains bright."

Bill Blackham, Condor's Chief Executive Officer, commented: "We are pleased with our strategic alternatives process concluding with a transaction we believe is attractive for our shareholders. NHT is acquiring our very high quality portfolio of outperforming select service hotels and Condor shareholders are receiving a liquidity event at an attractive premium to our unaffected share price prior to the transaction announcement."

**Key Transaction Terms**

- Completion of the transaction, which is expected to occur in the fourth quarter of 2019, is subject to customary closing conditions, including the approval of Condor's common and preferred shareholders. There can be no assurances that any such conditions will be satisfied or waived or that the acquisition of the Portfolio will be completed.

- NHT OP has entered into voting agreements with certain shareholders of Condor that hold approximately 53% of the outstanding common shares and 100% of the preferred shares of Condor, pursuant to which, such holders have agreed to vote their shares of Condor in favor of the transaction.

- The transaction is not contingent on receipt of financing. NHT OP has entered into an equity commitment letter with NexPoint Advisors, L.P. ("NexPoint"), pursuant to which NexPoint has agreed to provide equity financing for the purchase price payable under the Merger Agreement (the "Equity Financing"). In addition to the Equity Financing, NHT will assume approximately US$8.65 million of in-place property level mortgage financing and expects to obtain secured financing to finance a portion of the purchase price and refinance certain debt of Condor.

- Upon closing of the transaction, holders of common stock of Condor would receive US$11.10, without interest thereon, per share, holders of 6.25% Series E Preferred Stock of Condor would receive US$10.00 per share and limited partners of Condor's operating partnership, Condor Hospitality Limited Partnership ("Condor OP"), would receive US$0.21346 per Condor OP partnership interest.

- The transaction is an arm's length transaction and no non-arm's length party of NHT holds any interest in Condor or its assets.

- NHT expects to maintain its current quarterly dividend of US$0.075 per unit or US$0.300 per unit on an annualized basis.

**B.  The Preclusive Deal Protection Devices**

30.     As part of the Merger Agreement, defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

31.     By way of example, Section 5.2(a)(iv) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal.  Section 5.2(a)(i) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

32.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be NexPoint. For example, pursuant to Section 5.2(c)(i) of the Merger Agreement, the Company must notify NexPoint of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, Section 5.2(e) requires that the Board grant NexPoint four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. NexPoint is able to match the unsolicited offer because, pursuant to Section 5.2(e) of the Merger Agreement, the Company must provide NexPoint with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

33.     In other words, the Merger Agreement gives NexPoint access to any rival bidder's information and allows NexPoint a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Condor, because the Merger Agreement unfairly assures that any "auction" will favor NexPoint and allow NexPoint to piggy-back upon the due diligence of the foreclosed second bidder.

9

34.     In addition, pursuant to Section 7.3(b) of the Merger Agreement, Condor must pay NexPoint a termination fee of $9,540,000 if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

35.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of NexPoint's inadequate offer price.

## C.  The Materially Incomplete and Misleading Proxy

36.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Condor stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

37.     On August 9, 2019, defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Condor shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts

38.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of KeyBanc's fairness opinion, KeyBanc reviewed "certain other internal information, primarily financial in nature, concerning Condor's business and operations furnished to KeyBanc by Condor for purposes of its analysis." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Condor's management provided to the Board and KeyBanc.

39.     Notably, defendants failed to disclose the financial projections for any years after fiscal year 2019 (and any other periods available including LTM as of March 31, 2019), for: (a) hotel revenue; (b) hotel operating expenses; (c) unallocated hotel and property operations expense; (d) other expense, net; (e) general and administrative excl. SBC; (f) corporate expenses; (g) hotel EBITDA; and (h) total corporate EBITDA. The Proxy further fails to disclose the financial projections for all periods (including LTM as of March 31, 2019) for: (a) depreciation and amortization; (b) income tax; (c) net income; (d) capital expenditures; (e) changes in net working capital; (f) stock-based compensation expense; (g) FFO; and (h) AFFO. This omitted information is necessary for Condor stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning KeyBanc's Financial Analyses

40.     With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose whether KeyBanc performed any type of benchmarking analysis for Condor in relation to the target companies.

41.     With respect to the *Analysis of Comparable Public Companies,* the Proxy fails to disclose whether KeyBanc performed any type of benchmarking analysis for Condor in relation to

the selected public companies.

42.    The Proxy fails to disclose whether KeyBanc conducted a discounted cash flow analysis or net present value analysis. If such an analysis was performed, the Proxy has failed to disclose such analysis.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

43.    The Proxy also fails to disclose material information concerning the sales process. For example, on September 6, 2018, the Board received presentations from five investment banks on strategic alternatives for Condor. Those presentations included preliminary Company valuations and detailed valuation analyses. Yet the Proxy does not disclose those valuation analyses.

44.    The Proxy notes that between October 1, 2018 and October 25, 2018, Condor entered into 45 non-disclosure agreements, including with NexPoint. Non-disclosure agreements were also entered into with Party J and Party K in December 2018 and January 2019, respectively. The Proxy fails to state whether those non-disclosure agreements are still in effect and/or contain DADW standstill provisions that prevent those parties (except NexPoint) from making a topping bid for the Company. The Proxy further fails to state whether any standstill agreements were waived.

45.    In early November 2018, the Company received indications of interest from nine parties: NexPoint and Parties B, C, D, E, F, G, H and I. The Proxy does not disclose the terms of those proposals, including the proposed merger consideration and Company valuation.

46.    Another round of proposals were made between November 20, 2018 and November 23, 2018. The Proxy discloses the proposed merger consideration from Parties C and E, and then describes the proposals by Parties B, E and NexPoint. Party D's proposal was discussed in the

Proxy but the proposed merger consideration was not disclosed. The Proxy does not clarify whether Party E made two separate proposals, or if one of the proposals attributed to Party E was made by Party D.

47.     NexPoint Hospitality Trust began conducting due diligence on May 18, 2019. Yet the Proxy does not disclose whether NexPoint Hospitality Trust executed a non-disclosure agreement with Condor before obtaining access to the virtual data room.

48.     The Proxy states that the Company's legal advisor received financing commitment letters from NexPoint Hospitality Trust on July 12, 2019, six days before the Board received KeyBanc's oral fairness opinion on the Proposed Transaction. The Proxy does not disclose whether the Board was informed of the content of the financing commitment letters, or who was providing the financing for the Proposed Transaction. In its fairness opinion, KeyBanc notes that it is "in discussions to provide acquisition financing to NHT Operating Partnership, LLC in connection with the mergers." The Proxy does not state whether these discussions were taking place before the Board approved the Proposed Transaction or received the fairness opinion from KeyBanc, or whether the Board was aware of these discussions when it decided to approve the Proposed Transaction. This presents a major conflict of interest on the part of KeyBanc, as KeyBanc has an incentive to ensure that the Proposed Transaction is consummated. And potentially, KeyBanc had an incentive to steer the Board into approving the Proposed Transaction.

49.     KeyBanc's fairness opinion also states that KeyBanc has provided services to NHT Operating Partnership, LLC and its affiliates, receiving $21 million from January 1, 2017 through June 30, 2019. The Proxy does not state whether KeyBanc provided services to Highland Capital Management L.P., NexPoint Real Estate Advisors L.P. or other Highland Capital Management

L.P. affiliates. This is material information for Condor's stockholders, given that Highland Capital Management L.P. is sponsoring NexPoint Hospitality Trust.

50.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Without all material information, Condor stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

51.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

52.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

53.     Further, the Proxy indicates that on July 18, 2019, KeyBanc reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated July 19, 2019, to the effect that the Merger Consideration was fair, from a financial point of view, to Condor shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning KeyBanc's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

54.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     Defendants have filed the Proxy with the SEC with the intention of soliciting Condor shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

57.     In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Condor, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

58.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

15

59.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Condor shares and the financial analyses performed by KeyBanc in support of its fairness opinion; and (iii) the sales process.

60.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that KeyBanc reviewed and discussed its financial analyses with the Board on July 18, 2019, and further states that the Board relied upon KeyBanc's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

61.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

63.     The Individual Defendants acted as controlling persons of Condor within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Condor and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

66.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants

reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to Condor shareholders unless and until defendants agree to include the material information identified above in the Definitive Proxy;

C.     Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy;

D.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

18

E.      Directing the defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: August 20, 2019

 

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      300 Delaware Avenue, Suite 1220
      Wilmington, DE 19801
      Telephone: (302) 295-5310
      Facsimile: (302) 654-7530
      Email: bdl@rl-legal.com
      Email: gms@rl-legal.com

      *Attorneys for Plaintiff*